IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BARRY OATES**, <br><br>           Plaintiff, <br><br>     v. <br><br> **CAROLYN W. COLVIN**, <br> Acting Commissioner of Social Security, <br><br>           Defendant. | Case No. 3:13-cv-01868-SI <br><br> **OPINION AND ORDER** |

Bruce W. Brewer, P.O. Box 421, West Linn, OR 97068. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201-2902; Jordan D. Goddard, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

   Barry Oates ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II and supplemental social security income ("SSI") under Title XVI of the Social Security Act. For the reasons discussed below, the Commissioner's decision is AFFIRMED.

PAGE 1 – OPINION AND ORDER

**STANDARDS**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.; see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A.  Plaintiff's Application**

On August 5, 2009, Plaintiff protectively filed applications for DIB and SSI benefits, alleging a disability onset date of December 1, 2005. AR 11. Plaintiff was born on December 20, 1957 and was 47 years old as of the alleged disability date. He currently is 57 years old.

PAGE 2 – OPINION AND ORDER

Plaintiff's claims were denied initially on January 15, 2010, and upon reconsideration on June 10, 2010. Plaintiff was found not to be disabled on or before December 31, 2005, the date Plaintiff was last insured. AR 85-98. On July 6, 2010, Plaintiff filed a request for a hearing. AR 100-01. On July 14, 2011, the hearing took place, and on July 19, 2011, ALJ John Bauer issued a decision from the bench, finding Plaintiff disabled as of December 1, 2004. AR 73.

On appeal, the Appeals Council vacated the ALJ's decision and remanded the case because the Appeals Council concluded that the ALJ's finding of disability was not supported by substantial evidence in the record. AR 77-79. The Appeals Council also noted what it believed to be a typographical error: Plaintiff alleged a disability onset date of December 1, 2005, but the ALJ found Plaintiff disabled as of December 1, 2004. AR 77. Because nothing in the record established that Plaintiff amended his alleged onset date, the Appeals Council concluded that this finding exceeded the scope of the applications filed. *Id.*

On remand, ALJ Paul Robeck held a hearing and issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act before December 19, 2012, but that Plaintiff was disabled as of December 19, 2012, when Plaintiff became an individual of "advanced age" under Social Security Regulations. AR 24. Plaintiff appealed the ALJ's determination that Plaintiff was not disabled from December 1, 2005 through December 19, 2012. The Appeals Council declined review and Plaintiff now seeks review of the Commissioner's decision in this Court. 42 U.S.C. § 405(g).

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

PAGE 3 – OPINION AND ORDER

determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R.

PAGE 4 – OPINION AND ORDER

>    §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.
>
> 5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2005. AR 14. Next, the ALJ applied the five-step sequential analysis. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of December 1, 2005. AR 14. Although Plaintiff worked after the alleged onset of disability, the ALJ found that this work activity did not rise to the level

of substantial gainful activity. *Id.* At step two, the ALJ determined that Plaintiff had the severe impairments of chronic obstructive pulmonary disease, emphysema, mild bilateral carpal tunnel syndrome, right ulnar neuropathy, mild degenerative joint disease of the right shoulder, obstructive sleep apnea, depression with intermittent suicidal ideation, generalized anxiety disorder, and polysubstance abuse. *Id.* At step three of the analysis, the ALJ determined that Plaintiff's impairments were not equivalent to the severity requirements listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 after the alleged onset date of disability. AR 15.

The ALJ then assessed Plaintiff's RFC. The ALJ determined that the Plaintiff had the RFC to perform light work with several specific limitations:

> [Plaintiff] should not climb ladders, ropes, or scaffolds. He is right-hand dominant and can only occasionally engage in gross and fine manipulation with the right [hand]. He must avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazards. He is capable of sustaining sufficient concentration, persistence, and pace for simple, repetitive tasks, but not more complex tasks.

AR 16. At step four, the ALJ found that Plaintiff was unable to perform past relevant work. AR 23. At step five, the ALJ determined that, before December 19, 2012, Plaintiff was capable of performing other work in the national economy. AR 24. The ALJ relied on testimony from the VE that given Plaintiff's age, education, work experience, and RFC before December 19, 2012, a significant number of jobs existed in the national economy that Plaintiff could have performed. AR 24.[1] Specifically, the VE identified four jobs: surveillance system monitor, children's attendant, election clerk, and usher. *Id.* The ALJ found the VE's findings to be consistent with

---

[1] The ALJ found that Plaintiff was disabled beginning December 19, 2012, because Plaintiff became an individual of "advanced age" for purposes of the Social Security Act on that date. AR 23.

PAGE 6 – OPINION AND ORDER

the Dictionary of Occupational Titles and thus Plaintiff was not disabled within the meaning of the Social Security Act before December 19, 2012. AR 24-25.

## DISCUSSION

Plaintiff argues that the ALJ erred by (A) misconstruing the medical opinion of physician Lori Siegel, M.D. in interpreting Dr. Siegel as reporting that Plaintiff could do "no more than light work"; (B) improperly rejecting Dr. Siegel's opinion that Plaintiff should be limited to a "sedentary line of work"; and (C) improperly rejecting the testimony of Plaintiff's significant other, Madonna Johnson.

### A. "No More Than Light Work"

On January 21, 2010, Emad Aboujaoude, a Veteran's Affairs ("VA") physician's assistant for compensation and pension, conducted a physical examination of Plaintiff's wrists. AR 604. Plaintiff's right wrist condition had been deemed "service-connected" in the past and Plaintiff was seeking service connection for his left wrist. *Id.* Mr. Aboujaoude ultimately concluded that Plaintiff's left wrist issues could not be connected to Plaintiff's service. AR 606. Additionally, Mr. Aboujaoude opined that Plaintiff "would be able to perform light to sedentary employment, given his orthopedic examination." *Id.* Dr. Siegel co-signed this opinion (the "2010 Opinion").[2]

Plaintiff argues that the ALJ erred by misconstruing the record. Specifically, Plaintiff argues that the ALJ misinterpreted Dr. Siegel's suggestion that Plaintiff could perform "light to sedentary type employment" to mean that Plaintiff could do "no more than light work."

---

[2] The Court recognizes that Mr. Aboujaoude wrote this opinion and Dr. Siegel co-signed it. The Court, however, will reference it as Dr. Siegel's 2010 opinion because Dr. Siegel co-signed the document and the government does not argue that it should be treated as an unacceptable medical source. *See* 20 C.F.R. § 404.1513; *see also Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) ("[A] nurse practitioner working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not.").

PAGE 7 – OPINION AND ORDER

Plaintiff's sole argument relating to this alleged error is a sentence in which Plaintiff asserts that the fact that Plaintiff "could perform 'light to sedentary' work is not the same thing as the ALJ's finding that [Dr. Siegel's] report holds that [Plaintiff] can do 'no more than light work.'" It appears that Plaintiff is arguing that "light to sedentary" work is a distinct exertion category, not a range of exertion levels. Defendant responds that the ALJ's interpretation of Dr. Siegel's suggestion is a rational one because the purpose of an RFC is to describe the most that a claimant is able to do.

It is the ALJ's responsibility to resolve ambiguities in the record and conflicts in medical evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Andrews*, 53 F.3d at 1039-40). Here, the ALJ's interpretation of Dr. Siegel's 2010 Opinion is a rational one. Dr. Siegel suggested that Plaintiff "would be able to perform light to sedentary type employment given [Plaintiff's] orthopedic examination." AR 606. The ALJ further discussed Dr. Siegel's finding that Plaintiff would have difficulty with repetitive gripping, pushing, and pulling. AR 21. The ALJ thus limited Plaintiff to "no more than light work" and found that Plaintiff could only occasionally engage in gross and fine manipulation with his right hand. AR 16. This is a rational interpretation of the evidence. Although Plaintiff's interpretation of Dr. Siegel's 2010 Opinion may also be rational, this Court must uphold the ALJ's conclusion if it is rational. Consequently, the ALJ did not err by translating Dr. Siegel's limitation of Plaintiff to "light to sedentary type employment" into "no more than light work" in the RFC.

B.  **"Sedentary Line of Work"**

On February 24, 2009, Doyle Kelley, a VA physician's assistant for compensation and pension, conducted a physical examination of Plaintiff. AR 484. Mr. Kelley made several notations regarding Plaintiff's physical condition and opined that Plaintiff would be "best suited in a sedentary line of work" because of Plaintiff's wrist issues. AR 485. Dr. Siegel co-signed this opinion (the "2009 Opinion").[3] The ALJ concluded that the limitation to sedentary work in the 2009 Opinion should be given little weight because it was based on physical findings involving only the condition of Plaintiff's wrists. AR 22. The ALJ reasoned that these impairments could be expected to cause limitations in lifting and manipulation, but not limitations in standing and walking. *Id.*

Plaintiff argues that the ALJ should not have discredited Dr. Siegel's suggestion of limiting Plaintiff to a sedentary line of work because Dr. Siegel formed this opinion with lifting restrictions in mind. The government responds that the ALJ reasonably interpreted the term "sedentary" to include standing and walking limitations and, therefore, the ALJ properly discredited that portion of Dr. Siegel's opinion.

The ALJ is responsible for resolving conflicts in Plaintiff's medical record. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). This includes any conflicts among physician's opinions. *Id.* Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is

---

[3] Once again, the Court recognizes that Mr. Kelley wrote this opinion and Dr. Siegel co-signed it. The Court, however, will reference it as Dr. Siegel's 2009 opinion.

PAGE 9 – OPINION AND ORDER

given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). The ALJ may only reject an uncontradicted medical opinion by providing "clear and convincing" reasons supported by substantial evidence in the record. *Holohan*, 246 F.3d at 1202. On the other hand, if a treating physician's opinion is contradicted, the ALJ can rely on the contrary opinion of a non-treating physician only if the ALJ provides "specific and legitimate" reasons. *Id.* The ALJ can meet that burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The treating physician's opinion, however, is still entitled to deference and must be weighed using the factors provided in 20 C.F.R. § 404.1527. *Id.*; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The same standards apply "for rejecting a treating doctor's credible opinion on [the ultimate issue of] disability." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Here, the ALJ reasoned that Dr. Siegel's 2009 Opinion limiting Plaintiff to sedentary work warranted little weight because Dr. Siegel's examinations did not support limitations in the ability to stand or walk. AR 22. The ALJ instead afforded "great weight" to Dr. Siegel's 2010 opinion, which stated that Plaintiff could perform "light to sedentary type employment." AR 606. A restriction to sedentary work includes standing and walking restrictions. The term is defined for purposes of the Social Security Act as follows:

> Sedentary work involves lifting no more than [ten] pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

PAGE 10 – OPINION AND ORDER

20 C.F.R. § 404.1567(a). The text of 20 C.F.R. § 404.1567(a) defines sedentary work beyond only lifting requirements and instead requires both lifting and standing and walking limitations. The record indicates that the ALJ appreciated the breadth of the term "sedentary" and therefore discredited Dr. Siegel's overall conclusion that Plaintiff would be best in sedentary work. The ALJ explained that he rejected Dr. Siegel's conclusion because Dr. Siegel did not observe or assess Plaintiff's ability to stand or walk. The ALJ, however, did incorporate into the RFC Dr. Siegel's findings and observations regarding Plaintiff's wrist issues.

Plaintiff further argues that because the ALJ did not give Dr. Siegel's opinion controlling weight, the ALJ erred by not applying the 20 C.F.R. § 404.1527(c)(2) factors. A finding that a treating physician's opinion is not consistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Orn*, 495 F.3d at 631 (quoting SSR 96-2P, *available at* 1996 WL 374188 (July 2, 1996)). Importantly, the ALJ did not reject Dr. Siegel's opinion in favor of an examining or reviewing physician's opinion. The ALJ rejected a portion of Dr. Siegel's 2009 Opinion in favor of Dr. Siegel's 2010 Opinion and gave specific and legitimate reasons for doing so.

Nevertheless, the ALJ effectively applied 20 C.F.R. § 404.1527(c)(2)(ii) in his reasoning for limiting the weight given to Dr. Siegel's opinion. The relevant text from 20 C.F.R. § 404.1527(c)(2)(ii) reads:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating

>source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a non-treating source.

The ALJ gave little weight to Dr. Siegel's 2009 Opinion that Plaintiff would be best suited in a sedentary type job because Dr. Siegel did not examine Plaintiff for any condition that would limit standing or walking. Thus, Dr. Siegel did not have reasonable knowledge of any condition affecting Plaintiff's standing or walking abilities. As previously discussed, a sedentary job encompasses standing and walking limitations as well as lifting limitations. The ALJ specifically noted that Dr. Siegel's findings would be indicative of lifting and manipulative limitations and accordingly credited those findings to the extent they were consistent with the record. The weight allocated by the ALJ to Dr. Siegel's 2009 Opinion is therefore supported by substantial evidence in the record.

### C.  Lay Witness Testimony of Ms. Johnson

Plaintiff argues that the ALJ erred by rejecting portions of the lay witness testimony of Ms. Johnson. Plaintiff suggests that Ms. Johnson's reports of Plaintiff's poor sleep patterns indicate that he has an employment capacity that is less than sedentary and that Plaintiff should therefore be found disabled for the relevant time period.

An ALJ must consider lay witness testimony regarding a claimant's symptoms or how an impairment affects the claimant's ability to work. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony "cannot be disregarded without comment." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). If an ALJ expressly decides to discount lay witness testimony, the ALJ must give reasons that are germane to each witness. *Id.*; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Further, "the reasons 'germane to each witness' must be specific." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1054).

PAGE 12 – OPINION AND ORDER

Here, the ALJ gave Ms. Johnson's report some weight. AR 21. The ALJ specifically credited Ms. Johnson's descriptions of Plaintiff's breathing problems, limitations in lifting, use of his hands, and concentration, and the ALJ incorporated those limitations into the RFC. *Id.* Regarding Ms. Johnson's report of Plaintiff's stomach and sleep problems, however, the ALJ found that the limitations Ms. Johnson reported were not suggestive of disabling impairment. *Id.*

The ALJ did not err in his treatment of the testimony of Ms. Johnson. Concerning stomach issues, the ALJ provided a germane reason to discredit Ms. Johnson's report. The ALJ explained that no definitive etiology had been found for Plaintiff's complaints of nausea and vomiting. AR 20. Furthermore, if the ALJ did err in discounting Ms. Johnson's report of Plaintiff's stomach issues, such error was harmless. Plaintiff was diagnosed with gastroesophageal reflux disease ("GERD"), but doctors opined that the condition was linked to Plaintiff's use of alcohol. AR 21, 718. "An individual shall not be considered to be disabled for purposes of [DIB] if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see also Parra v. Astrue*, 481 F.3d 742, 744-45 (9th Cir. 2007) (explaining that a claimant bears the burden of proving that substance abuse is not a contributing factor to his or her disability). Because substantial evidence in the record supported that Plaintiff's alcohol abuse was a contributing, if not the sole, factor to Plaintiff's stomach issues, any error in discounting Ms. Johnson's testimony regarding this issue was harmless.

Similarly, the ALJ provided a germane reason to discredit Ms. Johnson's report regarding Plaintiff's sleep patterns. An ALJ may rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" to discredit symptom testimony. *Molina*, 674 F.3d at 1113 (quoting *Smolen*, 80 F.3d at 1284) (quotation marks omitted).

Although Plaintiff was diagnosed with obstructive sleep apnea, the ALJ noted that Plaintiff never returned calls for treatment after a Continuous Positive Airway Pressure ("CPAP") consult. Consequently, the ALJ gave less weight to Ms. Johnson's reports concerning Plaintiff's sleep patterns because Plaintiff did not follow through with treatment recommendations.

## CONCLUSION

The Commissioner's decision that Mr. Oates is not disabled within the meaning of the Social Security Act is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 26th day of March, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge